# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **MATTHEW ROGERS**, |
| Plaintiff, |
| v. |
| **SMITHSONIAN INSTITUTION** *et al.*, |
| Defendants. |

Case No. 1:17-cv-00759 (TNM)

## MEMORANDUM OPINION

Matthew Rogers, a Security Officer for the Smithsonian Institution, has sued his employer for alleged discriminatory and retaliatory conduct due to race, disability, use of leave under the Family Medical Leave Act ("FMLA"), and filing of Equal Employment Opportunity ("EEO") complaints. Compl., ECF No 1. The Complaint lists eight counts of action—Violation of Title VII of the Civil Rights Act of 1964, Hostile Work Environment based on Race, Violation of the Americans with Disabilities Act of 1990 ("ADA") (two counts), Violation of the Rehabilitation Act of 1973 ("Rehabilitation Act") (two counts), Violation of the FMLA, and Retaliation—but also makes other general allegations that are incorporated by reference into each count. *See id.*

The Smithsonian Institution and its Secretary (collectively, the "Smithsonian" or "Defendants") have filed a motion to dismiss all of Mr. Rogers' allegations as either failing to state a claim upon which relief can be granted or, because they are not administratively exhausted, this Court lacks subject matter jurisdiction. Defs.' Mot. to Dismiss, ECF No. 6. Upon consideration of the pleadings, relevant law, and related legal memoranda in opposition

and in support, the Defendants' motion will be granted, and the Complaint will be dismissed without prejudice.

## I. Background

Mr. Rogers is an African-American male who works as a Security Officer at the Smithsonian's warehouse in Maryland. Compl. ¶¶ 11, 14. He has a certified disability for which he is entitled reasonable accommodation. *Id*. ¶¶ 26-27. His supervisor and assistant supervisor are both Hispanic. *Id.* ¶¶ 15, 21. Mr. Rogers' complaints, as alleged, all arise from the following series of events.

### A. General FMLA Leave Allegations

Mr. Rogers alleges that in or around August through October 2016, he requested FMLA leave which was denied without explanation. *Id.* ¶¶ 29, 32, 34.[1] He also alleges that his supervisor "threatened" that Mr. Rogers would be "'disciplined'" if he used his FMLA leave. *Id.* ¶ 31. Mr. Rogers alleges that in June 2016, he requested FMLA leave to care for his wife, who suffers from cancer and needed assistance at home during treatment. *Id.* ¶ 35. His supervisor allegedly denied this request without explanation and "used [Mr. Rogers'] FMLA days against him." *Id.* ¶¶ 37-38.

---

[1] The Complaint alleges that the events occurred around August through October 2015, but the exhibit Mr. Rogers cites to support this allegation is dated between July 13, 2016 and August 29, 2016. Compl. ¶ 29, *id.* Ex. 2, ECF No. 1-3. Through this exhibit and the context of the subsequent few paragraphs of the Complaint, I interpret the Complaint to include a typo and that Mr. Rogers meant 2016.

2

### B. Leave Warning Letter in August 2016

Sometime after Mr. Rogers' FMLA leave request was allegedly denied, his wife had a serious medical episode at home, and Mr. Rogers was able to "arrive in time to assist his wife to receive emergency treatment only because he was returning to pick [up] a personal item." *Id.* ¶¶ 40-42. On August 27, 2016, Mr. Rogers received a leave warning letter from his supervisor related to the days missed from work that Mr. Rogers took to care for his wife following the medical episode. Defs.' Mot. to Dismiss Ex. B at 11, ECF No. 6-2. On August 29, 2016, Mr. Rogers' union representative requested that the leave warning letter be rescinded as the days off had previously been accepted for FMLA leave by the Smithsonian's health unit. Compl. Exs. 2-3.

On September 9, 2016, Mr. Rogers filed an informal complaint (also called pre-complaint processing) with the Smithsonian's Office of Equal Employment and Minority Affairs ("OEEMA"), alleging discrimination based on disability (FMLA). Defs.' Mot. to Dismiss Ex. B. Mr. Rogers wrote that "[m]anagement chose to ignore my FMLA" and that "[o]ther officer[s] have used unscheduled leave who do not have FMLA and was not given a [medical approval] letter." *Id.* On September 13, 2016, Mr. Rogers' supervisor rescinded the leave warning notice given that Mr. Rogers' "unscheduled leave usage – days were covered under FMLA." *Id.* Ex. C, ECF No. 6-2. On October 11, 2016, EEO Counsellor Shadella Davis issued a counseling report describing the issue as "[w]hether Mr. Rogers was subjected to disparate treatment based on disability (FMLA) when, on August 27, 2016, he received a leave warning letter." *Id.* Ex. A, ECF No. 6-2.

On December 1, 2016, Mr. Rogers filed a formal complaint with the EEO alleging discrimination based on "FMLA/Disability," citing the date of discrimination as August 27, 2016. *Id.* Ex. D, ECF No. 6-2. The complaint was assigned case number 17-07-120116. *Id.*

On January 4, 2017, OEEMA dismissed the complaint for failure to state a claim because the leave warning letter was rescinded before Mr. Rogers filed his formal complaint and that "there is no evidence in the record to show that you are currently subjected to any adverse action or that you were denied any entitlement in relation to a term, condition or privilege of employment as a result of the allegation stated in your complaint." *Id*. Ex. E, ECF No. 6-2. The letter further advised Mr. Rogers of his rights to file a notice of appeal within 30 calendar days of receipt of the decision with the EEO Commission ("EEOC"), or file a civil action within 90 calendar days of receipt of the decision in an appropriate U.S. District Court. *Id*. Mr. Rogers received this letter on January 7, 2017. *Id*. Ex. F, ECF No. 6-2.

**C. Leave Reprisal in October 2016**

On October 21, 2016, Mr. Rogers submitted a leave request for October 26, 2016, which was denied. Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") Ex. 1 at 4, ECF No. 7-2; *see also* Defs.' Reply to Pl.'s Opp. Ex. A, ECF No. 9-1. He sought pre-complaint processing on October 24, 2016, alleging that his request was denied as reprisal for his prior EEO activity. *Id*.

On December 2, 2016, Mr. Rogers filed a formal complaint of discrimination based on retaliation for engaging in prior EEO activity. *Id*. Ex. D. The complaint was assigned case number 17-08-120216. *See id*. Ex. E.[2] On January 4, 2017, OEEMA issued a letter of acceptance to investigate the claim, but on January 26, 2017, OEEMA mailed a "Revised –

---

[2] The Smithsonian's letters, *id.* Exs. E-F, state the complaint filing date as December 1, 2016 but the formal complaint is time stamped December 2, 2016. *Id. Ex. D.*

4

Letter of Dismissal" of this complaint that "rescinds and supersedes the agency's letter of acceptance dated January 4, 2017." *Id*. Exs. E-F.

OEEMA found that because the request for leave was initially denied but later approved on the same day, it failed to state a claim, and dismissed the complaint. *Id.* Ex. F. The letter informed Mr. Rogers of the right to file a notice of appeal within 30 days of the receipt of the decision with the EEOC, or to file a civil action within 90 days of the receipt of the decision in an appropriate U.S. District Court. *Id*.

### D. Fiscal Year 2016 Evaluation

In his annual performance evaluation for the fiscal year ending on September 30, 2016, Mr. Rogers' supervisor rated him a score of 1.0 out of 3.0, with 1.0 being at the bottom end of the range of a "Successful" performance; the highest rating achievable was "Outstanding" (with a cutoff of 2.6) and the second-highest rating achievable was "Highly Successful" (with a cutoff of 1.6). Compl. Ex. 12. In fiscal years 2011, 2012, 2013, 2014, and 2015, Mr. Rogers' performance evaluation had been rated "Outstanding." *Id.* Exs. 7-11. On November 29, 2016, Mr. Rogers' supervisor allegedly told him that there was no need to assess Mr. Rogers at a higher rating because Mr. Rogers was not able to rotate to the control room. Pl.'s Opp. Ex. 2 at 7, ECF No. 7-4. Mr. Rogers felt that his relatively lower score for fiscal year 2016 discriminated against his approved reasonable accommodation of being placed solely at one building, and "not [being] able to go building to building." *Id*. at 5.

On December 1, 2016, Mr. Rogers filed for pre-complaint processing, claiming discrimination based on disability and reprisal. *Id.* at 3. EEO Counselor Shadella Davis issued her counseling report and a Notice of Right to File an Individual Complaint of Discrimination on December 16, 2016. Defs.' Mot. to Dismiss Exs. H, K, ECF No. 6-2.

Mr. Rogers filed his formal complaint with OEEMA on January 11, 2017, which was assigned case number 17-13-010617. Defs.' Mot. to Dismiss Exs. J, K, ECF No. 6-2. On March 24, 2017, OEEMA sent Mr. Rogers a letter summarizing his claim and stating that Mr. Rogers should inform OEEMA of any disagreement with the statement of the claim within ten calendar days of receipt of the letter. *Id.* On July 6, 2017, the Smithsonian sent Mr. Rogers' counsel a letter regarding "Post Investigative Options Notice and Report of Investigation Transmittal in the Discrimination Complaint." *Id.* Ex. L, ECF No. 6-2. The letter, which stated that it "does not constitute a final Agency decision," informed Mr. Rogers that the investigation into his complaint was complete and informed Mr. Rogers of his options to contest any perceived deficiencies in the investigation, to seek a hearing before an EEOC Administrative Judge, or to request a final agency decision on the merits of the complaint. *Id.* In the absence of any affirmative choice within 30 calendar days, the letter stated that a final agency decision would be prepared within 60 calendar days after that. *Id.*

## II. Legal Standard

### A. Subject Matter Jurisdiction

Federal courts, as courts of limited jurisdiction, are "affirmatively obliged to consider whether the constitutional and statutory authority exist [] to hear each dispute." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party invoking federal jurisdiction has the burden to establish that the court has subject matter jurisdiction. *Knapp Medical Ctr. v. Hargan*, 875 F.3d 1125, 11128 (D.C. Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In deciding the jurisdictional question, the court must "assume the truth of all material factual allegations in the complaint and

'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). But the court need not accept factually unsupported inferences or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A court may look beyond the complaint to consider "undisputed facts evidenced on the record" to satisfy itself that it has subject matter jurisdiction. *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

### B. Failure to State a Claim

A party may move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). In addition, "[i]n determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

**III. Analysis**

Mr. Rogers' Complaint makes a host of general allegations that are not described in the counts alleged, making it difficult to map the precise underpinnings for each count of his suit. Even accepting as true his well-pled factual allegations, and construing his claims liberally for purposes of determining subject matter jurisdiction, *see Thomas v. Principi*, 394 F.3d at 972, all of his claims either fail to state a claim upon which relief can be granted or are not administratively exhausted and I therefore lack subject matter jurisdiction over them.

**A. Race Discrimination—Counts 1 and 2, General Allegations**

The first two counts of the Complaint allege racial discrimination under Title VII of the Civil Rights Act of 1964. Compl. ¶ 91 (alleging that Mr. Rogers' FMLA leave requests were denied due to race); *id.* ¶¶ 96-97 (alleging a hostile work environment for African American employees who attempt to use FMLA leave). The Complaint also generally alleges that Mr. Rogers' supervisor treats Hispanic employees better than African-American employees, and favors Hispanic employees over Mr. Rogers. Compl. ¶¶ 14-23. All of Mr. Rogers' claims based on racial discrimination fail to state a claim upon which relief may be granted because they are not administratively exhausted.

For claims brought under Title VII, exhaustion of administrative remedies is a procedural requirement, not a jurisdictional one. *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (describing Title VII exhaustion as a "procedural device[]"); *see also Jones v. U.S. Dep't of Justice*, 111 F. Supp. 3d 25, 30 n.4 (D.D.C. 2015) ("The recent trend in this district is to treat failure to exhaust under Title VII as a failure to state a claim rather than as a jurisdictional defect."), *aff'd*, 2017 WL 3895064 (D.C. Cir. 2017). The claim brought in federal court must be

"limited in scope to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations" and a "liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process" is prohibited. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted).

None of Mr. Rogers' racial discrimination claims were brought before the agency for administrative adjudication. He has alleged making three formal complaints to the EEO—numbers 17-07-120116 (leave warning letter in August 2016), 17-08-120216 (denial of FMLA leave in October 2016), and 17-13-010617 (fiscal year 2016 evaluation). Each of these complaints was based on a specific event and was consistently described and understood throughout the pre-complaint processing and formal administrative process as covering only that event. Mr. Rogers now makes broad allegations that his FMLA leave requests were denied due to race, that a hostile work environment exists for African-American employees who try to use FMLA leave, and that Mr. Rogers and other African-Americans are subject to disparate treatment, but none of these claims were brought or adjudicated during the administrative process. On his pre-complaint processing forms, Mr. Rogers did not check the box for race as a potential basis for the alleged discrimination, but did check the boxes for disability and/or reprisal. Defs.' Mot. to Dismiss Ex. B (complaint 17-07-120116), Defs.' Reply to Pl.'s Opp. Ex. B (complaint 17-08-120216), Pl.'s Opp. Ex. 2 at 3-7 (complaint 17-13-010617). During the pre-complaint counseling process, the EEO Counselor discussed Mr. Rogers' claims with him and issued counseling reports which included a statement of the claim and summaries of the interviews conducted. Consistent with the pre-complaint processing forms, the counseling reports detail disability and/or reprisal as the bases for the alleged misconduct, and do not indicate that racial discrimination was alleged or investigated. Defs.' Mot. to Dismiss Ex. A

(complaint 17-07-120116), Pl.'s Opp. Ex. 1 at 3-4 (complaint 17-08-120216), Defs.' Mot. to Dismiss Ex. H (complaint 17-13-010617). The OEEMA accordingly did not consider, investigate, or decide any race-based discrimination claim. *See* Defs.' Mot. to Dismiss Ex. E (complaint 17-07-120116), Pl.'s Opp. Ex. 3 (complaint 17-08-120216), Defs.' Mot. to Dismiss Ex. K (complaint 17-13-010617). Mr. Rogers' claims of racial discrimination have not been presented to or exhausted before the administrative agency, and therefore fails to state a claim in this Court upon which relief can be granted.

### B. Disability Discrimination—Counts 3, 4, 5, 6

Mr. Rogers' next set of claims allege disability discrimination, although he pleads two of the counts under the ADA (Counts 3 and 4) and two under the Rehabilitation Act (Counts 5 and 6). Compl. ¶¶ 105, 113, 121, 130. Disability discrimination claims against the federal government are brought under the Rehabilitation Act because the ADA does not make the federal government a covered employer. *See* 42 U.SC. § 12111(5)(B)(i) ("The term 'employer' does not include . . . the United States"); *Porfiri v. Eraso*, 121 F. Supp. 3d 188, 193-94 (D.D.C. 2015) (explaining that the standard for disability discrimination under the ADA and Rehabilitation Act are the same). I will therefore consider Mr. Rogers' disability discrimination claims under the Rehabilitation Act. *See also* Pl.'s Opp. 3-4. Construing his ADA claims as Rehabilitation Act claims shows that Counts 3 and 5 are the same claim, and Counts 4 and 6 are the same claim.[3] None, however, survive.

---

[3] *Compare* Compl. ¶¶ 103-05 ("Plaintiff attempted to take FMLA in order to accommodate for his disability. . . . Defendant's actions [denial of Plaintiff's requests] are a violation of the ADAAA.") *with id.* ¶¶ 119-21 ("Plaintiff attempted to take FMLA in order to accommodate for his disability . . Defendant's actions [denial of Plaintiff's requests] are a violation of the Sec [*sic*] 505 of the Rehabilitation Act of 1973."). *Compare id.* ¶ 113 ("Defendant's [*sic*] use of an accommodated activity as a reason for a negative evaluation is a violation of the ADAAA") *with*

10

Counts 3 and 5 allege that the Smithsonian improperly denied Mr. Rogers' FMLA leave requests. As detailed in Section I.A.–C., the Complaint alleges a few instances of improper denials. Mr. Rogers first claims to have been denied FMLA leave in or around June 2016, and August through October 2016. Compl. ¶¶ 29-32, 35-37; *see also* Section I.A. He does not provide specific dates for these requests or denials other than the ones detailed in Section I.B.–C. It is not clear whether Mr. Rogers alleges that other instances of FMLA leave beyond those detailed in Section I.B.–C. were denied, but to the extent that he is, these have not been administratively exhausted. This means that I lack jurisdiction over those claims. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) ("Since there was no administrative complaint and thus no final disposition of one, the district court lacked jurisdiction."); *see also Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015) (clarifying that *Spinelli* addressed only the circumstance where a plaintiff "never filed an administrative complaint, there was never any final administrative disposition of a complaint, or any reviewable final administrative action at all.").

Mr. Rogers also complains of being issued a leave warning letter for missing work to care for his sick wife. *See supra* Section I.B. He received a dismissal of his complaint from OEEMA, which provided notice that any civil action should be filed within 90 days, but failed to file his Complaint within the limitations period. *See id.* Having received notice of the OEEMA's dismissal of his claim on January 7, 2017, he was required to file his Complaint in this Court by April 7, 2017. He did not do so until April 25, 2017. Since he was "unambiguously notified" that he must sue within 90 days, and has not raised any argument for

---

*id.* ¶¶ 130 ("Defendant's [*sic*] use of an accommodated activity as a reason for a negative valuation is a violation of Sec [*sic*] 505 of the Rehabilitation Act of 1973.").

equitable tolling,[4] this claim must be dismissed for failure to state a claim. *See Dougherty v. Barry*, 869 F.2d 605, 613 (D.C. Cir. 1989) (holding that a complainant's Title VII claims that were not filed within 90 days of receiving a dismissal of a charge should have been dismissed).

Counts 4 and 6 allege that Mr. Rogers was given a lower evaluation for fiscal year 2016 because, due to his disability, he is unable to rotate among different buildings. *See supra* Section I.D. After pre-complaint processing, Mr. Rogers filed a formal complaint with OEEMA, but has not alleged that OEEMA has made a final agency decision on his claim. *See id.* On July 6, 2017, OEEMA notified Mr. Rogers to either challenge its investigation into his complaint, to seek a hearing before an EEOC Administrative Judge, or to request a final agency decision on the merits. *Id.* He has not alleged that any of these prerequisite events have occurred. Without a final disposition of Mr. Rogers' administrative complaint, I lack jurisdiction to consider this claim. *See Spinelli*, 446 F.3d at 162; *Doak*, 798 F.3d at 1103 ("In *Spinelli*, this court addressed the jurisdictional consequence of a plaintiff's wholesale failure to file an administrative complaint or to obtain any administrative decision at all.").

### C. Denial of FMLA Leave—Count 7

The Complaint purports to assert claims under the FMLA itself. Compl. ¶¶ 132-36. But for federal employees such as Mr. Rogers, the FMLA provides no private right of action for alleged violations. *Sullivan-Obst v. Powell*, 300 F. Supp. 3d 85, 99 (D.D.C. 2004); *see also Cavicchi v. Sec'y of Treasury*, 2004 WL 4917357, at *6 (11th Cir. 2004) (agreeing with the U.S.

---

[4] Mr. Rogers only makes an equitable tolling argument for his retaliation claim about his October 26, 2016 leave request. Pl.'s Opp. 5-7. Because it was dismissed by OEEMA for failing to state a claim on January 26, 2017, *see supra* Section I.C, and Mr. Rogers' suit was filed on April 25, 2017, I analyze this claim in Section III. D., *infra*.

Courts of Appeals for the Fourth and Ninth Circuits that Congress did not expressly waive sovereign immunity for suits by federal employees under the FMLA).

### D. Retaliation—Count 8, General Allegations

Mr. Rogers also makes various allegations of retaliation. He alleges that his October 21, 2016 leave request was denied "in retaliation of him asserting his legal right" and that his fiscal year 2016 performance valuation "was in retaliation of Plaintiff's filing of an EEO complaint against the defendant and Plaintiff's Supervisor." Compl. ¶¶ 74, 143.

To begin, it is not clear which "legal right" Mr. Rogers claims to have asserted that resulted in the alleged denial of the leave request. It makes no difference. To establish a *prima facie* case of retaliation, a plaintiff must show that he was (1) engaged in a protected activity; (2) subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Walker v. District of Columbia*, 279 F. Supp. 3d 246, 271 (D.D.C. 2017). Individuals are protected "not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006). Mr. Rogers has not shown that he was subject to an adverse employment action by the Smithsonian. His request, while not initially approved, was ultimately approved before the date for which he requested leave. *See supra* Section I.C. This does not amount to a "materially adverse" employment action. *See Burlington Northern*, 548 U.S. at 67 ("it is important to separate significant from trivial harms."). His claim about the October 21, 2016 leave request must be dismissed for failure to state a claim.

Mr. Rogers' claim about his 2016 fiscal year performance is similarly vague as to which statute(s) he claims to have been violated. Title VII of the Civil Rights Act of 1964, the ADA, and the Rehabilitation Act all contain provisions prohibiting retaliation. 42 U.S.C. § 2000e-3(a)

(Title VII of Civil Rights Act of 1964), 42 U.S.C. § 12203 (ADA), 29 U.SC. § 791(f) (setting the standards to use for determining violations as the same as those for the ADA). Regardless, Mr. Rogers' failure to allege exhaustion of his administrative remedy for this claim is fatal under all flavors. Mr. Rogers has not alleged any facts to indicate that he has exhausted the administrative process; indeed, he does not allege that he has sought any administrative remedies at all. *See generally* Compl. ¶¶ 75-86. To the extent failure to exhaust is a procedural bar and may be excused under the equitable doctrines of waiver, estoppel, or tolling, Mr. Rogers has provided no reason to apply any of these doctrines, and I do not find that the circumstances here warrant equitable relief. *See Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).

Further, Mr. Rogers' supervisor's statements do not constitute an adverse employment action. *See Turner v. Shinseki*, 824 F. Supp. 2d 99, 116 (D.D.C. 2011) (holding that verbal and written criticisms are not adverse employment actions "unless they are tied to the employee's bonus, or result in some other material employment action"). Though Mr. Rogers alleges that the Smithsonian bases its annual bonuses on evaluations and "substantially considers annual evaluation ratings" in promotion and hiring decisions, he has not alleged that his relatively lower 2016 evaluation impacted his bonus or any promotion or hiring decision. *See* Compl. ¶¶ 75-87. This provides an independent basis to dismiss Mr. Rogers' retaliation allegation over his 2016 fiscal year performance evaluation.

**E. Fair Labor Standards Act**

Last, the Complaint makes two cursory references to the Fair Labor Standards Act. Compl. ¶ 1 ("Plaintiff Matthew Rogers . . hereby submits this complaint . . to recover damages for . . . Fair Labor Standards Act); *id.* ¶ 7 ("Plaintiff brings this action under . . . the Fair Labor Standards Act."). From the complete lack of any factual allegations in the Complaint to support

this claim, it appears that Mr. Rogers is not seriously pursuing it, and his purported Fair Labor Standards Act claim will be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint must offer more than "naked assertions devoid of further factual enhancement.") (internal quotation marks omitted).

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss will be granted and the Complaint will be dismissed without prejudice. A separate order will issue.

Dated: April 10, 2018

TREVOR N. MCFADDEN
United States District Judge